1

1        UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF NEW YORK
2
     - - - - - - - - - - - - - X
3
UNITED STATES OF AMERICA,    :   21-CR-458(CBA)
4
          Plaintiff ,        :
5                                United States Courthouse
      -against-              :   Brooklyn, New York
6
ROBERTO CORTES RIPALDA,      :
7                                September 13, 2023
          Defendant.         :   2:00 p.m.
8
     - - - - - - - - - - - - X
9
              TRANSCRIPT OF PLEADING
10       BEFORE THE HONORABLE CAROL B. AMON
            UNITED STATES DISTRICT JUDGE
11
APPEARANCES:
12
For the Government: BREON PEACE
13                  United States Attorney
                    BY: BENJAMIN WEINTRAUB
14                      DREW ROLLE
                        Assistant United States Attorneys
15                      271 Cadman Plaza East
                        Brooklyn, New York
16
                    UNITED STATES DEPARTMENT OF JUSTICE - CRM
17                  1400 New York Ave, NW
                    Washington, D.C.
18                  BY:  RANDALL WARDEN, ESQ.
                         CHAD DAVIS, ESQ.
19
For the Defendant:  MYERS & GALIARDO LLP
20                  52 Duane Street
                    New York, New York
21                  BY: MATTHEW D. MYERS, ESQ.

22
Court Reporter:         Andronikh M. Barna
23                      225 Cadman Plaza East
                        Brooklyn, New York
24                      (718) 613-2178

25 Proceedings recorded by mechanical stenography, transcript
   produced by computer-aided transcription.

2

1            THE COURTROOM DEPUTY:  Good afternoon.

2            This is criminal cause for a plea.  21-CR-458.

3    U.S.A. versus Roberto Cortes Ripalda.

4            May the parties please state your name for the

5    record, starting with the government.

6            MR. WEINTRAUB:  Good afternoon, Your Honor.

7            Benjamin Weintraub for the United States.  I'm

8    joined at counsel's table by Randall Warden, Department of

9    Justice; Assistant United States Attorney Drew Rolle;

10   Chad Davis, Department of Justice; Special Agents

11   Jeffrey LaMirand and Joe Weber of the IRS.

12           THE COURT:  Okay.

13           MR. MYERS:  Matthew Myers for Mr. Cortes.

14           Good afternoon.

15           THE COURT:  Good afternoon.

16           Everyone can be seated.

17           Mr. Myers, do you have an application this

18   afternoon?

19           MR. MYERS:  Yes.  My client wishes to withdraw any

20   previously-entered pleas of not guilty and enter a plea of

21   guilty under the terms of plea agreement and certain other

22   understandings.

23           THE COURT:  Are there other understandings other

24   than what is in the plea agreement?

25           MR. MYERS:  Just the one highlight would be that in

1    that plea agreement, of course, is our ability to challenge

2    the loss amount.

3            THE COURT:  But that is in the plea agreement?

4            MR. MYERS:  It is.  It is.

5            THE COURT:  All right.

6            Mr. Cortes Ripalda, your counsel tells me that you

7    wish to enter a guilty plea, pursuant to an agreement with the

8    government, to Count Two of the outstanding indictment, which

9    is a conspiracy to commit wire fraud.  This is a very serious

10   decision.  I have to make sure that you understand all of your

11   rights and the consequences of a plea.  That means that I have

12   to ask you a whole series of questions.  I do require that

13   your answers to my questions be made under oath, so my

14   courtroom deputy will administer an oath to you to tell the

15   truth.

16           THE COURTROOM DEPUTY:  Raise your right hand,

17   please.

18           (Defendant sworn/affirmed.)

19           THE COURTROOM DEPUTY:  Thank you.

20           THE COURT:  You can be seated now.

21           And just speak microphone.

22           Having been sworn to tell the truth, you have to do

23   that.  If you were to lie on purpose in response to any

24   questions that I ask, you could face a further criminal charge

25   for perjury or false statement.

4

1          Do you understand that?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  If there is anything that I say that you

4   do not understand, you just stop me and tell me you do not

5   understand it and I will try and make it plainer.

6          Is that clear?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  All right.

9          First of all, how old are you?

10         THE DEFENDANT:  56.

11         THE COURT:  How far in school did you go?

12         THE DEFENDANT:  College graduate.

13         THE COURT:  Are you presently or have you recently

14  been under the care of a doctor, including a psychiatrist, for

15  any reason?

16         THE DEFENDANT:  No.  Only a cardiologist.

17         THE COURT:  The cardiologist that you see, are you

18  taking medication in connection with that?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  What type of medication are you taking?

21         THE DEFENDANT:  Blood pressure and blood thinners.

22         THE COURT:  Have you taken that medication in the

23  last 24 hours?

24         THE DEFENDANT:  Yes, Your Honor.  This morning.

25         THE COURT:  Does that medication in any way

5

1   interfere with your ability to think clearly?

2           THE DEFENDANT:  No, Your Honor.

3           THE COURT:  Other than that medication, in the past

4   24 hours have you taken any other pills, drugs, medicine or

5   alcohol of any kind?

6           THE DEFENDANT:  No, Your Honor.

7           THE COURT:  Is your mind clear today?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  Mr. Myers, have you discussed the

10  question of a guilty plea with your client?

11          MR. MYERS:  Yes, Your Honor.

12          THE COURT:  In your view, does he understand the

13  rights he is waiving by pleading guilty?

14          MR. MYERS:  He does.

15          THE COURT:  Do you have any question about his

16  competency to proceed?

17          MR. MYERS:  No, Your Honor.

18          THE COURT:  Mr. Cortes Ripalda, have you had enough

19  time to discuss with your attorney this decision to enter a

20  guilty plea in this case?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Are you satisfied to have him represent

23  you?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  All right.  Have you read over all of

6

1    the charges in the indictment?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Specifically with regard to Count One,

4    the conspiracy to commit wire fraud, have you discussed that

5    charge with your counsel?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Do you believe you understand the

8    charge?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  All right.  Now, the charge, let me just

11   go over it briefly.  The charge says that in or about and

12   between August of 2013 and April of 2018, that you, together

13   with others, did knowingly and intentionally conspire to

14   devise a scheme and artifice to defraud investors and

15   potential investors in Biscayne Capital and to obtain money

16   and property from them by means of one or more materially

17   false and fraudulent pretenses, representations and promises

18   and for the purpose of executing such scheme and artifice to

19   defraud, did transmit and cause to be transmitted by means of

20   wire communications in interstate and foreign commerce

21   writings, signs, signals, pictures and sounds in violation of

22   Title 18, United States Code, Section 1343.

23             So what is charged there to begin with as a

24   conspiracy?  You cannot commit the crime of conspiracy by

25   yourself.  Conspiracy means that you formed an agreement with

7

1    at least one other person.  And the agreement was that you

2    would engage in the scheme to defraud to obtain money, and

3    that pursuant to this scheme to defraud you would use wires,

4    the various wires in interstate and foreign commerce.

5            Could the government just briefly describe the

6    scheme so that it is clear that the defendant understands the

7    nature of the scheme?

8            MR. WEINTRAUB:  Yes, Your Honor.

9            Among other things, the defendant and other

10   coconspirators made material misrepresentations to potential

11   investors to obtain new investment money into

12   Biscayne Capital.

13           For example, some of the misrepresentations were

14   that new investor money would be used to fund, develop real

15   estate development in the Florida area, whereas that money or

16   a portion of that money was, in fact, illicitly

17   misappropriated to repay older investors, money that was owed

18   to older investors.

19           Other misrepresentations made to obtain new

20   investment money were, for example, that investments would be

21   secured by mortgages on certain properties, first mortgages on

22   certain properties.  When these representations were made,

23   they were knowingly false, as the properties had already been

24   subjected to prior recorded first mortgages.

25           These are just a couple of illustrative examples.

8

1  But at large, there are material misrepresentations to obtain

2  new investor money which was misappropriated to repay older

3  investors.

4          THE COURT:  And the use of the wires, what would you

5  prove there?

6          MR. WEINTRAUB:  There were e-mail communications in

7  furtherance of efforts to obtain money.  There were bank

8  accounts that were opened to receive new investor money and to

9  transfer around investor money to older investors.

10         THE COURT:  And venue here in the Eastern District?

11         MR. WEINTRAUB:  There were bank accounts that were

12 used to receive investor money that were opened up at

13 Deutsche Bank New York, out of the New York office.

14         There were --

15         THE COURT:  That is in this district?

16         MR. WEINTRAUB:  There were the communications to

17 Deutsche Bank New York, passed through the waters that

18 surround the Eastern District of New York.

19         There were phone calls that were made in furtherance

20 of the scheme to individuals in the Eastern -- at

21 Deutsche Bank New York, sitting in Manhattan, which phone

22 calls passed through the waters surrounding the

23 Eastern District of New York.

24         THE COURT:  I'm sorry, how did that happen?  How

25 does a phone call pass through the waters of the

9

1  Eastern District?

2          MR. WEINTRAUB:  The wire communications, the phone

3  calls made from Florida to somebody sitting in Manhattan

4  passed over and through the waters that surround the

5  Eastern District of New York, which surrounds Manhattan, which

6  is --

7          THE COURT:  Were there investors within the

8  Eastern District of New York?

9          MR. WEINTRAUB:  No.

10          Furthermore, in paragraph 4 of the plea agreement,

11  the defendant is waiving any challenge to venue.

12          THE COURT:  Is that correct, Counsel?

13          MR. MYERS:  That's correct, Your Honor.

14          THE COURT:  Do you understand what was said about

15  waiving venue and whether you are agreeing to that in your

16  plea agreement?  Do you understand what that means,

17  Mr. Cortes?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Just to explain it briefly.  This court

20  has jurisdiction of crimes that are committed only in this

21  district, which includes Brooklyn, Queens, all of Long Island

22  and Staten Island.  If parts of the crime are committed, for

23  instance, in the Southern District of New York, Manhattan,

24  that is not the district that this court sits in.  But you can

25  waive venue; in other words, give up your right to have this

10

1    case tried and transferred to that court and agree to have it

2    proceed here.

3                Do you understand that?

4                THE DEFENDANT:  Yes, Your Honor.

5                THE COURT:  And I am told by counsel for the

6    government and your lawyer that you have agreed to not raise

7    that issue of venue; is that correct?

8                THE DEFENDANT:  Yes, Your Honor.

9                THE COURT:  Now, the government has explained the

10   charge.

11               Do you understand it?

12               THE DEFENDANT:  Yes, Your Honor.

13               THE COURT:  What I want to review with you now are

14   rights you have.  These will be rights that you give up if you

15   decide to plead guilty.

16               First of all, you have a right to persist in your

17   original plea of not guilty.

18               Do you understand that?

19               THE DEFENDANT:  Yes, Your Honor.

20               THE COURT:  If you plead not guilty to the charge,

21   you would have a right under the Constitution and laws of the

22   United States to a speedy and public trial before a jury with

23   the assistance of your attorney.

24               Do you understand that?

25               THE DEFENDANT:  Yes, Your Honor.

1        THE COURT:  At any trial, you would be presumed

2    innocent.  You do not have to prove you are innocent.  That is

3    because under our system of law, it is the government that

4    bears the burden of proof, and that is proof beyond a

5    reasonable doubt that you are guilty of a crime charged.  If

6    the government failed to meet the burden of proof, the jury

7    would have the duty to find you not guilty.

8        Do you understand?

9        THE DEFENDANT:  Yes, Your Honor.

10       THE COURT:  Now, in the course of a trial witnesses

11   for the government would have to come here to court, they

12   would have to testify in your presence.  Your lawyer would

13   have the right to cross-examine these witnesses.  He could

14   raise legal objections to evidence the government sought to

15   offer against you.  He could offer evidence on your behalf.

16   That would include the right to subpoena witnesses to come to

17   court if you thought those witnesses would be helpful to your

18   case.

19       Do you understand that?

20       THE DEFENDANT:  Yes, Your Honor.

21       THE COURT:  At trial you would have the right to

22   testify on your own behalf if you wanted to.  On the other

23   hand, you could not be forced to be a witness at your trial.

24   Under the Constitution and laws of the United States, no

25   person can be made to be a witness against himself.  So if you

12

1    wanted to go to trial but you chose not to testify, I would

2    tell the jury they could not hold that against you.

3           Do you understand?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  Now, if instead of going to trial you

6    plead guilty to the crime charged, if I accept your guilty

7    plea, you will be giving up your right to a trial and all of

8    the other rights I have just discussed.  There will be no

9    trial in this case and no right to an appeal on the question

10   of whether you did or did not commit the crime.  I will simply

11   enter a judgment of guilty based upon your plea.

12          Do you understand?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  If you do plead guilty, I am going to

15   have to ask you questions about what you did in order to

16   satisfy myself that you are guilty of the charge.  You are

17   going to have to answer my questions and admit your guilt.

18   That means you would be giving up your right not to

19   incriminate yourself.

20          Do you understand?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Are you willing to give up your right to

23   a trial and all of the other rights I have just discussed?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  All right.

13

1          Now, I have before me what has been marked as

2    Government Exhibit 1, a plea agreement.  It is an 11-page

3    document.

4          Let me ask the government.  Do you represent to the

5    Court that the plea agreement marked Government Exhibit No. 1

6    contains the entirety of any understanding your office has

7    reached with this defendant?

8          MR. WEINTRAUB:  Yes, Your Honor.

9          THE COURT:  Mr. Myers, is that your understanding as

10   well?

11         MR. MYERS:  Yes, Your Honor.

12         THE COURT:  Mr. Ripalda, this is your signature on

13   the agreement; is that correct?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  Before you signed this agreement, did

16   you read it?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  Did you discuss it with your counsel?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  Do you believe you understand the

21   provisions of the agreement?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  Is there anything at all in this

24   agreement that is not clear that you would like explained in

25   any further detail now?

14

1           THE DEFENDANT:  No, Your Honor.

2           THE COURT:  Did the government make some promise to

3     you that is not in this agreement?

4           THE DEFENDANT:  No, Your Honor.

5           THE COURT:  There is one part of the agreement that

6     I want to bring specifically to your attention because you are

7     giving up another right that you would otherwise have, and

8     that is at paragraph 4.  It says that "the defendant agrees

9     not to file an appeal or otherwise challenge by petition,

10    pursuant to 28 U.S.C. Section 2255 or any other provision, the

11    conviction or sentence in the event that the Court imposes a

12    term of imprisonment of 240 months or below."

13          Now, what I understand that to mean is that if I

14    give you a sentence of 20 years or something less than that,

15    you are giving up your right to appeal that sentence to a

16    higher court and you would be giving up your right to appeal

17    even if you thought I made a mistake in sentencing.

18          Do you understand that?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  All right.  Let me go over the maximum

21    penalty for this offense.

22          The maximum term of imprisonment is 20 years.

23          Do you understand that?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  When the Court imposes a term of

1  imprisonment, I can follow that by a period of supervised

2  release.  In this case, the maximum term of supervised release

3  is three years.

4          Now, supervised release begins after you serve your

5  prison term.  So you are no longer in prison, but your conduct

6  is governed by certain conditions.  And if you were to violate

7  any of the conditions of your supervised release, I could send

8  you back to prison for two full years without giving you any

9  credit for the time you had spent on supervised release.

10         Do you understand that?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  There are a series of financial

13  penalties here.  The maximum fine is $250,000 or twice the

14  gross gain or loss, whichever is greater.

15         Does the government want to tell me what that figure

16  would be?

17         MR. WEINTRAUB:  Your Honor, as highlighted or as

18  previewed by counsel for the defendant, we don't have an

19  agreement or stipulation as to what the loss amount is.  The

20  government would intend to prove that it's in excess of

21  $150 million.

22         THE COURT:  So the government then believes the fine

23  could be as high as $300 million?

24         MR. WEINTRAUB:  Correct, Your Honor.

25         THE COURT:  Again, Mr. Cortes Ripalda, that is the

1    government's position, but I just want to tell you the

2    worst-case scenario.  So the fine could be as high as

3    $300 million.

4              Do you understand that?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  Restitution, what is the restitution

7    figure?

8              MR. WEINTRAUB:  That would -- it is mandatory in an

9    amount to be determined at sentencing.  We don't have a figure

10   for that yet.

11             THE COURT:  Do you have an approximation of what it

12   might be?

13             MR. WEINTRAUB:  More than -- more than $10 million,

14   at the very lowest amount.  But beyond that, I don't have a

15   more specific figure.

16             THE COURT:  All right.

17             Under this statute, if there are victims -- there

18   are victims of the fraud.  And if the government establishes

19   that these victims lost money as a result of the activities

20   that you did in connection with the crime, then I have to

21   order restitution, I do not have any discretion about that.

22   So at the time of sentencing, the government will provide

23   the Court with information about who the victims are and how

24   much money they lost.  If they prove that, establish that,

25   then I have to order restitution.  The government says the

1    lowest they believe it would be would be $10 million.  So do

2    you understand that financial -- that is the financial

3    penalty.

4              Do you understand that?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  And there is criminal forfeiture in

7    addition to that.

8              How much is the criminal forfeiture?

9              MR. WEINTRAUB:  Yes, Your Honor.  That's agreed to

10   in paragraph 6 of the plea agreement in the amount of

11   $3,400,000.

12             THE COURT:  All right.  The government has said that

13   they are entitled a criminal forfeiture of $3,400,000 and that

14   you have agreed that that is the appropriate forfeiture

15   amount.

16             Do you understand that?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  In addition, there are is a $100 special

19   assessment.  Again, that is mandatory, I must impose that.

20             Is that clear?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Also, it is important for you to

23   understand that if you are not a United States citizen, that

24   by pleading guilty to an offense of this severity, it provides

25   the basis for a deportation.

1          Do you understand that?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  The government has here -- I just did

4    not understand this -- "denaturalization."

5          Is he a naturalized citizen?

6          MR. WEINTRAUB:  Yes, Your Honor, he's a naturalized

7    citizen.

8          THE COURT:  How could he be denaturalized?

9          MR. WEINTRAUB:  I believe he could be denaturalized

10   and deported.

11         THE COURT:  And what?

12         MR. WEINTRAUB:  I believe you can be denaturalized

13   and deported.  It's not something that our office handles, but

14   it's my understanding that that's a potential consequence of a

15   guilty plea.  If the naturalization were procured by

16   concealment --

17         THE COURT:  By fraud, yes.  In other words, if you

18   establish that there was something in the naturalization

19   process, that he lied on the application or something, then

20   that could result in denaturalization.  But absent that, I

21   think he would be a United States citizen.

22         I mean, this conviction alone would not provide the

23   basis to deport him; is that accurate?

24         MR. WEINTRAUB:  Without knowing right now what he

25   said in connection with his application for naturalization,

1   it's impossible right now to say precisely.  But if in

2   connection with his application he said something in which he

3   concealed aspects of his criminal activity, then it could lead

4   to denaturalization.

5         THE COURT:  When was he naturalized?  At what point

6   in time was he naturalized?

7         THE DEFENDANT:  In mid-'90s.  '94, '5.  I mean '96.

8   Sorry.

9         THE COURT:  This offense does not go back to that

10   time period, does it?

11         MR. WEINTRAUB:  No, it does not go back that far.

12         THE COURT:  I just want to make sure that you

13   understand this, what we are saying about this, because this

14   is significant.

15         If you are a naturalized citizen -- and I do not

16   know whether you are or not, I am just saying this.  If you

17   are a naturalized citizen, the fact that you committed this

18   offense long after you were naturalized should not in and of

19   itself provide, as I understand it, a basis to be deported.

20   But if for any reason it is uncovered that you made false

21   statements in your naturalization papers, and particularly

22   false statements about criminal conduct let's say at the time,

23   then that would provide a basis for you to be denaturalized,

24   at which point you could consider this conviction and it would

25   provide a basis to deport you.

1          So, do you understand that?

2          THE DEFENDANT:  Yes.  Yes, Your Honor.

3          I just want to make sure that that's included in the

4   language.

5          MR. WEINTRAUB:  Yes.  It's in paragraph 15.

6          I'll just read from the plea agreement in the second

7   sentence, starting on the line 3.

8          It says, "Under federal law, an individual may be

9   subject to denaturalization removal if his naturalization was

10  procured by concealment of material fact or by willful

11  misrepresentation or otherwise illegally procured."

12         THE COURT:  Does the government believe that I have

13  stated it accurately though?

14         MR. WEINTRAUB:  Yes, Your Honor.

15         THE COURT:  Did you understand what I said about it?

16         THE DEFENDANT:  Absolutely, Your Honor.

17         THE COURT:  Do you want to talk to Mr. Myers any

18  more about this before we proceed?

19         (Pause in proceedings.)

20         THE DEFENDANT:  I understand, Your Honor.

21         THE COURT:  Okay.  You are ready to proceed then?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Now, one of the important factors in

24  sentencing are Sentencing Guidelines.  Have you discussed with

25  your counsel Sentencing Guidelines and how they are

1  calculated?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Okay.  In your plea agreement, the

4  government estimates that your guideline range here would be

5  an offense level of 45, which would, on the Sentencing Table,

6  result in a Sentencing Guideline recommendation of life in

7  prison.

8          Do you understand that?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  However, in this case, since you are

11  pleading guilty to only one count, the maximum for that count

12  is 20 years.  So that effectively makes the guideline range in

13  your case 20 years.

14          Do you understand that?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  Now, whatever your guideline range is is

17  an important factor in sentencing, but I am not required to

18  follow it.  There are other significant factors that I need to

19  take into account.  Let me just tell you what some of those

20  are.  They are the seriousness of the offense, the need to

21  promote respect for the law, to provide just punishment.  I

22  take into account your own background, need for deterrence to

23  criminal conduct, both deterrence to you and then deterrence

24  generally to others who would seek to engage in the same type

25  of activity.  Those are just some of the other factors that I

1    take into account at sentencing.

2              Do you understand that?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  In the federal sentencing system, we do

5    not have parole boards or parole commissions.  So what that

6    means practically is whatever sentence you do receive will be

7    pretty close to the actual amount of time that you have to

8    spend in prison.  You do not have an opportunity to appeal to

9    a parole board to get out early because there are no parole

10   boards.

11             Do you understand that?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  Finally, if you enter a guilty plea

14   today, your guilty plea will stand.  You cannot come back to

15   court at the time of sentence and tell me you have changed

16   your mind, that you want to go to trial.  At that point it is

17   too late.

18             Do you understand that?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Therefore, I want to ask you now, do you

21   have any questions that you want to ask me about the charge,

22   your rights or anything else related to this matter that might

23   not be clear?

24             THE DEFENDANT:  No, Your Honor.

25             THE COURT:  Counsel, do you know any reason why your

1    client should not enter a guilty plea to Count One?

2             MR. MYERS:  No, Your Honor.

3             THE COURT:  Are you ready to plead?

4             THE DEFENDANT:  Yes, Your Honor.

5             THE COURT:  How do you plead to the charge in

6    Count One, guilty or not guilty?

7             THE DEFENDANT:  Guilty, Your Honor.

8             THE COURT:  Are you making this plea of guilty

9    voluntarily and of your own free will?

10            THE DEFENDANT:  Yes, Your Honor.

11            THE COURT:  Has anyone threatened, forced or

12   pressured you to plead guilty?

13            THE DEFENDANT:  No, Your Honor.

14            THE COURT:  Other than the plea agreement with the

15   government, has anyone made you a promise that has caused you

16   to plead guilty?

17            THE DEFENDANT:  No, Your Honor.

18            THE COURT:  Has anyone promised you what sentence

19   you would receive?

20            THE DEFENDANT:  No, Your Honor.

21            THE COURT:  All right.  Then I need for you to tell

22   me in your own words what you did in connection with the crime

23   that is charged.

24            THE DEFENDANT:  May I read?

25            THE COURT:  Sure.

1          THE DEFENDANT:  At certain times between 2013 and

2    2018 here in the Eastern District of New York, I, along with

3    others in the indictment, agreed to devise a scheme to defraud

4    investors by falsely representing, by way of e-mails and other

5    electronic means, to investors of Biscayne Capital that their

6    investments were to be used to purchase proprietary products,

7    more specifically fund real estate investments, when in fact

8    their investment monies were used in an illegal fashion to

9    cover the debts owed to other investors within

10   Biscayne Capital.  I knew that what we did was not legal.

11         THE COURT:  Does the government think any further

12   inquiry needs to be made?

13         MR. WEINTRAUB:  No, Your Honor.

14         THE COURT:  Do you, Counsel?

15         MR. MYERS:  No, Your Honor.

16         THE COURT:  Based on the information given to me, I

17   find the defendant is acting voluntarily, that he fully

18   understands the charges, rights and the consequences of his

19   plea, and that there is a factual basis of the plea.  So I

20   therefore accept the plea of guilty to Count One.

21         Ms. Campbell, could you give us a sentencing

22   schedule, please?

23         THE COURTROOM DEPUTY:  Yes, Judge.

24         The PSR will be disclosed on December 6, 2023.

25         Defense papers will be due December 21st, 2023.

25

1          Government papers will be due December 28, 2023.

2          And sentencing will be set for January 4, 2024 at

3     10:00 a.m.

4          THE COURT:  Is there anything further we need to

5     take up from the government?

6          MR. MYERS:  Judge, can I have the -- I know you

7     always say I'm either on a trial or on vacation, but the first

8     week in January, I know my wife told me I'm on vacation.

9          THE COURT:  We can put it --

10         MR. MYERS:  Can we do the next week?

11         THE COURT:  The second week?

12         THE COURTROOM DEPUTY:  Yes, we can do the second

13    week.

14         THE COURT:  Okay, sure.

15         THE COURTROOM DEPUTY:  And that date would be the

16    10th at 10:00 a.m.

17         MR. MYERS:  How about the 12th?

18         THE COURTROOM DEPUTY:  The 12th at 10:00 a.m.

19         MR. MYERS:  That's good.  Thank you.  I appreciate

20    the courtesy.

21         THE COURT:  Anything further, Counsel?

22         MR. MYERS:  Nothing further, Your Honor.

23         THE COURT:  Nothing from the government?

24         MR. WEINTRAUB:  No, Your Honor.

25         MR. ROLLE:  One moment, Your Honor.

26

1          (Pause in proceedings.)

2          MR. WEINTRAUB:  I just wanted to front one issue.

3    There will be -- we strongly anticipate that there will be a

4    Fatico hearing with respect to the loss amount.  It is our

5    understanding that Mr. Myers will object to the PSR or will

6    make his position on loss amount known in response to the PSR,

7    but we wanted to alert the Court to the anticipation of a

8    Fatico hearing which might be a somewhat complicated one, in

9    the event that this affects at all the Court's scheduling.

10          THE COURT:  I think we could hold a hearing on that

11   day, couldn't we?

12          THE COURTROOM DEPUTY:  Yes.

13          THE COURT:  Okay.

14          MR. WEINTRAUB:  That's fine.

15          THE COURT:  All right.  Thank you.

16          (Matter concluded.)

17

18                   *    *    *    *    *

19   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
20

21     /s/ Andronikh M. Barna           September 15, 2023

22   _____     _____
         ANDRONIKH M. BARNA                  DATE

23

24

25